PAUL B. SNYDER
United States Bankruptcy Judge
1717 Pacific Ave, Suite 2209
Tacoma, WA 98402

✓ FILED
____ LODGED
____ RECEIVED

**November 14, 2008**

MARK L. HATCHER
CLERK U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
_____DEPUTY

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF WASHINGTON AT TACOMA**

| | |
|---|---|
| In re: | Case No. 07-43853 |
| TIMOTHY J. SMITH and KARRIE A. SMITH, | **MEMORANDUM DECISION** |
| Debtors. | |

THIS MATTER came before the Court on October 7, 2008, on objections to confirmation of Timothy and Karrie Smith's (Debtors) Chapter 13 Plan by the Chapter 13 Trustee (Trustee), the United States Trustee (UST) and creditor American Express Bank, FSB (American Express) (collectively referred to herein as "Objecting Parties"). A response was filed by the Debtors. At the conclusion of the hearing, the Court took the matter under advisement. This Memorandum Decision shall constitute Findings of Fact and Conclusions of Law as required by Fed. R. Bankr. P. 7052. This is a core proceeding under 28 U.S.C. § 157(b)(2).[1]

---

[1] Unless otherwise indicated, all "Code," Chapter and Section references are to the Federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Pub. L. 109-8, 119 Stat. 23, as this case was filed after October 17, 2005, the effective date of most BAPCPA provisions.

MEMORANDUM DECISION - 1

# I

# FINDINGS OF FACT

The Debtors filed a voluntary Chapter 7 petition on November 14, 2007. The UST filed a motion to dismiss under § 707(b) on January 24, 2008. On May 6, 2008, the Court orally granted the UST's motion based on the totality of the circumstances under § 707(b)(3). An agreed order was entered on the UST's motion on June 13, 2008.

On June 12, 2008, an order was entered granting the Debtors' motion to convert to Chapter 13. The Debtors filed a Chapter 13 Plan (Plan) on June 19, 2008, that proposes monthly payments of $889 for an applicable commitment period of six months, and an approximate dividend of four percent to creditors. Debtors list a liquidation amount of zero.

On Form 22C, the Debtors calculate their Monthly Disposable Income at negative $1,748.90. On Form 22C, the Debtors claim deductions for two homes and a car that they propose to surrender in their Chapter 13 Plan. These deductions add $7,185 to the Debtors' monthly expenses. If the expenses were disallowed, the Trustee calculates that the Debtors would have $4,191.10 available each month to pay unsecured creditors. Over a 60 month commitment period, such funds would be sufficient to pay all claims in full. The Objecting Parties claim that the Debtors have not committed all of their disposable income for 60 months as required by § 1325(b) and that the Plan has not been proposed in good faith as required by § 1325(a)(3). The issue in this case is whether the Debtors can confirm a Chapter 13 plan that asserts deductions for expenses related to property the Debtors intend to surrender in light of the Ninth Circuit Court of Appeals (Ninth Circuit) decision in In re Kagenveama, 541 F.3d 868 (9th Cir. 2008).

MEMORANDUM DECISION - 2

## II

## CONCLUSIONS OF LAW

### A. 11 U.S.C. § 1325(b)

The Objecting Parties argue that the Debtors' proposed Plan fails to commit all of their projected disposable income to the Plan for the applicable commitment period.

11 U.S.C. § 1325(b)(1) provides that if the trustee or holder of an allowed unsecured claim objects to confirmation of a plan, the court "may not approve the plan unless, as of the effective date of the plan . . . (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan."

11 U.S.C. § 1325(b)(2) provides, in relevant part:

> (2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor . . . less amounts reasonably necessary to be expended –
> (A)(i) for the maintenance or support of the debtor or a dependent of the debtor . . . that first becomes payable after the date the petition is filed."

11 U.S.C. § 1325(b)(3) provides that for an above median debtor, "[a]mounts reasonably necessary to be expended under paragraph (2) . . . shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)."

The Objecting Parties argue that in order for the Debtors to deduct the car and home payments, they must first establish under this section that such expenses are for their "maintenance or support." In other words, the Objecting Parties argue that even for an above median debtor, § 1325(b)(2) is a threshold requirement that determines what expenses are allowed. Under their theory, a court would not even consider § 1325(b)(3), unless the expense is first allowed under § 1325(b)(2). According to the Objecting Parties, payments on two homes and a car that the Debtors are surrendering or have surrendered are not allowed

MEMORANDUM DECISION - 3

expenses in determining disposable income because such expenses are not reasonably necessary for the maintenance or support of the debtors. The position of the Objecting Parties finds support in cases such as In re Gonzalez, 388 B.R. 292, 303 (Bankr. S.D. Tex. 2008); In re Spurgeon, 378 B.R. 197, 202 (Bankr. E.D. Tenn. 2007); In re McGillis, 370 B.R. 720, 730 (Bankr. W.D. Mich. 2007).

The Debtors' position is that an above median debtor is not required to establish that an expense is reasonably necessary for his maintenance and support under § 1325(b)(2). Instead, based on the plain language of § 1325(b)(3), "amounts reasonably necessary to be expended" in determining disposable income are determined solely by reference to § 707(b)(2). The position of the Debtors finds support in cases such as In re Musselman, 2008 WL 4488904, at *14-15 (E.D.N.C. Sept. 30, 2008); In re Quigley, 391 B.R. 294, 311 (Bankr. N.D. W. Va. 2008); In re Turner, 384 B.R. 537, 544-45 (Bankr. S.D. Ind. 2008).

The interrelationship of these code sections is an issue that currently divides the courts and a topic on which an abundance of case law has been written. Important to this decision is the recent ruling of the Ninth Circuit in Kagenveama. In Kagenveama, the debtor argued that the term "projected disposable income" as used in § 1325(b)(1), "means 'disposable income,' as defined by § 1325(b)(2), projected over the 'applicable commitment period.'" Kagenveama, 541 F.3d at 871-72. The Chapter 13 trustee took the position that the phrase instead "connotes a forward-looking concept that only uses the 'disposable income' calculation as a starting point." Kagenveama, 541 F.3d at 872. The Ninth Circuit agreed with the debtor's interpretation and held that the term "projected disposable income" as used in 11 U.S.C. § 1325(b)(1), means "disposable income," as defined by 11 U.S.C. § 1325(b)(2). Kagenveama, 541 F.3d at 872.

MEMORANDUM DECISION - 4

The Objecting Parties are correct that the Kagenveama decision dealt solely with income, and the meaning of the phrase "amounts reasonably necessary to be expended" was not before the Ninth Circuit. The decision is instructive, however, as to the approach the Ninth Circuit is taking in its interpretation of § 1325 post-BAPCPA.

The Ninth Circuit's analysis focused on a basic tenet of statutory construction that, when the statute's language is plain, "'the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms.'" Kagenveama, 541 F.3d at 872 (quoting Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004)). The Ninth Circuit determined that interpreting the statute to require "'disposable income,' as defined in subsection (b)(2), to be projected out over the 'applicable commitment period' to derive the 'projected disposable income' amount is the most natural reading of the statute." Kagenveama, 541 F.3d at 872.

This Court has reviewed the statutory language of § 1325 and the opposing schools of thought and concludes that the most natural reading of the statute in this case is the one advanced by the Debtors. Although the code sections are not a model of clarity, the Objecting Parties' position misinterprets the plain language of § 1325(b)(2). The plain language of the statute defines "disposable income" as income received by the debtor "less amounts reasonably necessary to be expended." For an above median debtor, as previously stated, § 1325(b)(3) provides: "[a]mounts reasonably necessary to be expended under paragraph (2) . . . shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)." (emphasis added). The statute is not ambiguous and for an above median debtor, expenses are to be determined solely by § 707(b)(2). Thus, if a given expenditure is allowed by

MEMORANDUM DECISION - 5

§ 707(b)(2), it is by definition "reasonably necessary to be expended" for purposes of calculating "disposable income" under § 1325(b)(2).

The Court is unwilling to read into the language of § 1325(b)(3) an additional threshold requirement that the expenses also be reasonably necessary, or for a debtor's maintenance or support. Although such an interpretation will surely lead to a more equitable result in this case and in the future provide greater discretion to bankruptcy courts, in light of Kagenveama this Court will not apply a strained interpretation when the language of § 1325(b)(3) is clear and unambiguous.

In concluding that the phrase "projected disposable income" is not a forward-looking concept, the Ninth Circuit also focused on the fact that the term "disposable income" appears only twice in § 1325; once in § 1325(b)(1)(B) ("projected disposable income"), and then in § 1325(b)(2) (defining "disposable income"). Kagenveama, 541 F.3d at 872. The Ninth Circuit concluded that "[t]he substitution of any data not covered by the § 1325(b)(2) definition in the 'projected disposable income' calculation would render as surplusage the definition of 'disposable income' found in § 1325(b)(2)." Kagenveama, 541 F.3d at 872-73. As with "disposable income," the term "amounts reasonably necessary to be expended" appears only twice in § 1325; once in § 1325(b)(2) and then in § 1325(b)(3). If the Court were to require an additional requirement that the expense also be necessary for a debtor's "maintenance or support," it would likewise render as surplusage the clear direction in § 1325(b)(3) as to how "amounts reasonably necessary to be expended" shall be determined.

This interpretation of § 1325 is not absurd because it may lead to results that are at odds with prior bankruptcy statutes and case law or that are less favorable in many situations for unsecured creditors of above-median debtors. As stated by the Ninth Circuit, "[i]f the

MEMORANDUM DECISION - 6

changes imposed by BAPCPA arose from poor policy choices that produced undesirable results, it is up to Congress, not the courts, to amend the statute." Kagenveama, 541 F.3d at 875. After Kagenveama, it would also be inconsistent to apply a backward-looking approach to income, yet adopt a forward-looking approach in determining expenses as proposed by the Objecting Parties. It would be similar to having a business employ two different accounting systems.

The result in this case is also not absurd merely because it represents a departure from prior approaches taken in Chapter 13 cases. In rejecting a forward-looking approach to calculating income, the Ninth Circuit was aware that this "approach represents a deliberate departure from the old 'disposable income' calculation, which was bound up with the facts and circumstances of the debtor's financial affairs." Kagenveama, 541 F.3d at 874. Congress has made the conscious choice to remove judicial discretion from the calculation of disposable income. To rule otherwise would be to disregard the plain language of the statute and the Ninth Circuit's recent Kagenveama decision.

The Court concludes that under § 1325(b)(3), for an above median debtor, amounts reasonably necessary to be expended are determined solely by reference to § 707(b)(2).

**B. Expenses Scheduled as Contractually Due**

The payments sought to be deducted by the Debtors are secured debts. Amounts "reasonably necessary to be expended" for servicing secured debts for an above median debtor are defined by § 707(b)(2)(A)(iii). This section provides in relevant part: "[t]he debtor's average monthly payments on account of secured debts shall be calculated as the sum of – (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition."

MEMORANDUM DECISION - 7

In the Chapter 7 context, the majority of bankruptcy courts that have addressed this issue have ruled that § 707(b)(2)(A)(iii) allows a debtor to deduct secured debt payments that are scheduled as contractually due, even though the debtor intends to surrender the collateral. These courts focus on the plain language of the statute dictating that the appropriate measuring point is the petition date. Accordingly, payments contractually due as of the petition date are deductible. This also appears to be the majority position taken by the bankruptcy courts in the Ninth Circuit. See, e.g., In re Maya, 374 B.R. 750, 753 (Bankr. S.D. Cal. 2007); In re Kelvie, 372 B.R. 56, 62 (Bankr. D. Idaho 2007); In re Wilkins, 370 B.R. 815, 819 (Bankr. C.D. Cal. 2007); In re Rodriguez, 2008 WL 372742 (Bankr. N.D. Cal. Feb. 11, 2008); In re Chang, 2007 WL 3034679, at *3 (Bankr. N.D. Cal. Oct. 16, 2007).

The Objecting Parties argue that even if such expenses are allowable in a Chapter 7, the analysis differs in the Chapter 13 context.[2] The Objecting Parties argue that the surrendered car and house payments should be disallowed because the payments are not scheduled as contractually due "as of the effective date of the plan." Proponents of this interpretation argue that this language in § 1325(b)(1) requires the Court to calculate a debtor's disposable income as of the effective date of the Chapter 13 plan which is generally regarded as the date of confirmation. See In re Seuss, 387 B.R. 243, 247-48 (Bankr. W.D. Mo. 2008). In this case, the Debtors have already surrendered the car and it has been liquidated by the secured creditor who has filed a deficiency claim. The Debtors have abandoned their two former homes and relocated into another residence. Thus, these are not payments that the Debtors will make as of the effective date of the Plan. Several bankruptcy courts have agreed with the Objecting Parties' position. See, e.g., In re Van Bodegom Smith,

---

[2] The UST argued that the Court should also rule that such expenses are disallowed in the Chapter 7 context. The Court is unwilling to adopt this position, as this issue is not before the Court.

MEMORANDUM DECISION - 8

383 B.R. 441, 452 (Bankr. E.D. Wis. 2008); In re Sackett, 374 B.R. 70, 72-3 (Bankr. W.D.N.Y. 2007); In re McPherson, 350 B.R. 38, 48 (Bankr. E.D. Va. 2006).

This Court respectfully disagrees with the position that the term "as of the effective date of the plan" in § 1325(b)(1), requires the Court to determine what payments are scheduled as contractually due at or after confirmation. 11 U.S.C. § 1325(b)(3) directs the Court to determine amounts reasonably necessary to be expended for an above median debtor according to § 707(b)(2). 11 U.S.C. § 707(b)(2)(A)(iii)(I) specifically states that the secured payments are those scheduled as contractually due "following the date of the petition." Evaluating whether secured payments are instead scheduled as contractually due as of the effective date, would render the specific language of § 707(b)(2)(A)(iii)(I) meaningless.

In addition, § 1325(b)(1) merely states that "as of the effective date," the Chapter 13 plan must provide that all of the debtor's "disposable income" to be received will be applied to make payments. The term "as of the effective date" merely "'dictates *when* the plan has to provide for payment of all of the debtor's disposable income to unsecured creditors,' not what the amount of the payment will be, which is a calculation to be 'made as of the petition date.'" Quigley, 391 B.R. at 311 (quoting In re Burmeister, 378 B.R. 227, 231 (Bankr. N.D. Ill. 2007)); see also In re Allen, 2008 WL 451053, at *7 (Bankr. D. Kan. Feb. 15, 2008) (holding that "scheduled as contractually due" means payments owed to secured creditors as of the petition date). As the payments at issue were scheduled as contractually due as of the petition date, such payments were properly deducted by the Debtors in calculating disposable income.

As previously indicated, the Court's interpretation of § 707(b)(2)(A)(iii) is also consistent with the Ninth Circuit's historical view of disposable income set forth in Kagenveama. The Ninth Circuit concluded that the term "projected disposable income" is not a forward-looking

MEMORANDUM DECISION - 9

concept that uses disposable income as a starting point, but is simply the debtor's disposable income calculated based on the average of what he or she earned over the six months preceding the petition. As of the effective date, the Debtors in this case had no projected disposable income.

### C. Good Faith

The Objecting Parties argue that the Debtors' Plan has not been filed in good faith as required by § 1325(a)(3) and (a)(7). Again, there is a division among the bankruptcy courts on this issue.

In support of their position, the Objecting Parties direct the Court to In re Marti, 393 B.R. 697 (Bankr. D. Neb. 2008) where the bankruptcy court determined that even though the debtor had no disposable income under Form 22C, the plan was not filed in good faith because he had sufficient actual income to pay creditors in full. The debtor in this case had obtained new employment with higher income just prior to filing. The court found that the totality of the circumstances allowed them to address facts not in the disposable income calculation. Marti, 393 B.R. at 701; see also In re Martin, 373 B.R. 731, 736 (Bankr. D. Utah 2007) (an item is not sheltered from scrutiny under the good faith analysis simply because it is an allowable expense on Form B22C). The Objecting Parties also reference In re Sunahara, 326 B.R. 768, 781 (9th Cir. BAP 2005) (holding that a proposed modification under § 1329 must meet the good faith requirement of § 1325(a)(3)), urging the Court to consider a debtor's ability to pay in evaluating good faith.

Although it is tempting to use a good faith analysis to alleviate what the Court believes to be an unfair result, the Court concludes that this would be an improper use of these Code provisions. The Debtors in this case have proposed a Plan that meets the requirements for confirmation. They have no disposable income based on the calculations set forth by the Code. There is no allegation of any misconduct on the part of the Debtors or of

MEMORANDUM DECISION - 10

misrepresentations in their proposed Plan.  Offering a Chapter 13 plan that proposes to pay only what is required by the Code should logically not be a violation of good faith.  Although the Debtors may have an ability to pay more into the Plan based on their Schedules I and J, the Ninth Circuit has previously ruled that a debtor's disposable income is a mathematical calculation based on historical income.  Kagenveama, 541 F.3d at 874-75.  As with expenses, it would be inconsistent to now hold that a forward-looking approach can be used to deny confirmation of a plan on the basis of good faith.[3]

Although there is a recognized split of authority, the Court's position does find support in the case law.  See, e.g., Turner, 384 B.R. at 545-46 (unwilling to find bad faith based solely on fact that the debtor did not commit more to fund plan than is required by 1325(b)(2)); In re Hoskings, 2008 WL 2235350, at *6 (Bankr. E.D. Va. May 29, 2008).  As stated by the bankruptcy court in In re Winokur, 364 B.R. 204, 206 (Bankr. E.D. Va. 2007), "[i]f the sole objection to the debtor's good faith is that the debtor proposes to pay the amount Congress requires by the mathematical formula, the debtor has complied with the good faith requirement.  He has done everything Congress asked him to do."

The Court is not holding that a good faith analysis is no longer applicable to Chapter 13.  Rather, the Court holds that it is not bad faith to propose a Chapter 13 plan that commits the least amount of income required by the Code.  The Objecting Parties have not provided any evidence that would support a finding of lack of bad faith, other than it is "unfair" or "unreasonable" to allow the Debtors to deduct expenses on surrendered property.  The

---

[3] The Court notes that in the Debtors' Chapter 7 case, the Court granted the UST's motion to dismiss under 11 U.S.C. § 707(b)(3)(A)(i)(B) based on the totality of the circumstances and specifically did not find that the petition was filed in bad faith.  It is not inconsistent to rule that the Debtors' Chapter 13 Plan is filed in good faith, but that it would have been an abuse of the totality of the circumstances to grant the Debtors relief under Chapter 7.

MEMORANDUM DECISION - 11

Objecting Parties have failed to establish that the Debtors' Plan was not proposed in good faith.

The Court recognizes that the interpretation of § 1325 it adopts in this decision may create what appears to be an unjust result in this case. Under the proposed Plan, the Debtors' unsecured creditors will receive nothing even though the Debtors will have significant disposable income available once the property is surrendered. Such result also may appear to be at odds with Congressional intent in enacting BAPCPA, i.e. that debtors should pay the maximum amount they can afford. See, e.g., In re Kibbe, 361 B.R. 302, 314 (1st Cir. BAP 2007). The converse, however, may also occur. If a debtor's actual expenses have increased postpetition, he or she will be required to pay more into a Chapter 13 plan than he or she can afford. This result jeopardizes the ability of a debtor to reorganize and would be at odds with the bankruptcy goal of providing a debtor a fresh start. However, "it is a rare occasion when a legislature's effort to establish specific guidelines is so refined that its application is guaranteed to be uniformly fair. It is inevitable that some nuance will have been overlooked. Nonetheless, the courts are bound to enforce what the legislature has enacted." McGillis, 370 B.R. at 726.

The Court is aware that the approach it is adopting is inconsistent with its own prior decisions and that appellate decisions decided since Kagenveama have rejected the Ninth Circuit's "snapshot" interpretation of "projected disposable income." See, e.g., In re Frederickson, 2008 WL 4693132 (8th Cir. October 27, 2008); In re Petro, 395 B.R. 369 (6th Cir. BAP 2008). The Court has given careful consideration to the opposing views and admittedly finds persuasive those cases that adopt a forward-looking approach in Chapter 13.

MEMORANDUM DECISION - 12

The Court, however, is bound by what it considers to be the proper interpretation of the Ninth Circuit's decision in Kagenveama.

In conclusion, the Objecting Parties have not stated a valid basis for denying confirmation of the Debtors' proposed Plan.

DATED: November 14, 2008

_____
Paul B. Snyder
U.S. Bankruptcy Judge

MEMORANDUM DECISION - 13